UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT CARDENAS, | ) | Case No. CV 14-4904 (AJW) |
| | ) | |
|        Plaintiff, | ) | |
| | ) | MEMORANDUM OF DECISION |
|    v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| et al., | ) | |
| | ) | |
|        Defendants. | ) | |
| _____ | ) | |

    The court has considered the testimony and exhibits admitted into evidence during the non-jury trial, the parties' proposed findings of fact and conclusions of law, and the closing arguments of counsel. With that as its basis, the court makes the following ruling.

### Findings of Fact

    1.  Plaintiff Robert Cardenas was born on April 26, 1951 [Reporter's Transcript of Proceedings ("RT") 579:16-20].

    2.  From 1972-1982, plaintiff worked for his sister at her Burnt Tortilla restaurant. [RT 376:8-377:8]

    3.  In 1992, plaintiff started working as a letter carrier for the United States Postal Service ("USPS") at the Redondo Beach Post Office.  [RT 580:23-581:13]

4.   Since 2011, Plaintiff has been on extended medical leave from work after injuring his shoulder and wrist while delivering mail. [RT 580:23-581:13; Pl. Depo. 47:4, 7-9[1]]

5.   The collision between plaintiff's vehicle and Susan Slaughter's vehicle occurred on July 2, 2012, at approximately 5:00 p.m. [Dkt. No. 54, Admitted Facts ("AF") 5(a)]

6.   Plaintiff was traveling westbound on West Redondo Beach Boulevard near the United States Post Office located at 1455 West Redondo Beach Boulevard, Gardena, CA 90247 (the "Gardena Post Office"). [AF 5(a), 5(d); RT 584:6-16, 467:4-6]

7.   Plaintiff was driving a 1993 Honda Accord. [AF 5(b); RT 97:4-16]

8.   Ms. Slaughter has been a USPS employee since 1990. [RT 464:23-465:4]

9.   At the time of the collision, Ms. Slaughter was a letter carrier working at the Gardena Post Office. [RT 465:5-7, 465:11-16]

10.  Ms. Slaughter was acting within the course and scope of her employment at the time of the collision. [AF 5(f)]

11.  Ms. Slaughter was familiar with the Gardena Post Office location and its vicinity. She had worked as a letter carrier at the Gardena Post Office and had resided in a nearby neighborhood for about twenty years.  [RT 468:1-16]

12.  On July 2, 2012, Ms. Slaughter was driving a Grumman Long Life Vehicle (LLV) (the "postal truck"), a standard postal truck used by letter carriers to deliver USPS mail.  [AF 5(c); RT 466:5-14]  The

---

[1] "Pl. Depo." refers to designated portions of plaintiff's deposition. [Dkt. No. 81]

driver of an LLV sits on the right side. [RT 577:15-17]

13. The Gardena Post Office is on the north side of West Redondo Beach Boulevard, between cross-streets Nuano Drive (to the west) and Normandie Avenue (to the east). [Trial Exhibit ("Ex.") 106-2; RT 467:7-18]

14. The employees' driveway is east of the driveway leading to the public parking lot of the Gardena Post Office. [Ex. 104-1]

15. Plaintiff intended to make a right turn into the public parking lot for the Gardena Post Office, not the employee's parking lot for the post office. [RT 585:8-20]

16. The collision between plaintiff's vehicle and Ms. Slaughter's vehicle occurred in the driveway leading to the employees' parking lot of the Gardena Post Office. [RT 466:18-467:3, 478:22-479:2; Ex. 104-1, 104-3]

17. The section of West Redondo Beach Boulevard near the Gardena Post Office is lined with strip malls and businesses. [RT 39:10-24, 467:22-25]

18. The strip mall immediately east of the Gardena Post Office ("the strip mall") includes the Burnt Tortilla restaurant. [Ex. 104-1, 104-4]

19. The driveway allowing traffic to enter and exit the strip mall from West Redondo Beach Boulevard is located approximately 90 feet east of the Gardena Post Office employees' driveway and approximately 140 feet east of the public driveway. [Ex. 104-4; RT 23:15-17, 95:12-17]

20. The portion of West Redondo Beach Boulevard in front of the Gardena Post Office is heavily traveled and the traffic is often slow

moving.  [Ex. 104-9; RT 33:5-9, 34:7-18, 268:12-18, 318:23-319:9, 639:23-640:7; Pl. Depo. 168:10-12]

21.  As westbound traffic on West Redondo Beach Boulevard crosses Normandie Avenue, the three marked westbound lanes narrow to only two lanes.  [Ex. 106]

22.  Two graphical lane-ending signs indicate to drivers on westbound West Redondo Beach Boulevard both east and west of Normandie Avenue that the third lane ends.  [Ex. 106-2]

23.  Westbound West Redondo Beach Boulevard contains three painted pavement arrows just west of the Normandie Avenue intersection indicating that the third lane ends.  [Exs. 104-8, 106-2, 109-39]

24.  In front of the Gardena Post Office, a designated left-turn pocket lane on eastbound West Redondo Beach Boulevard enables traffic to turn left into the public and employee driveways.  [Ex. 104-2]

25.  In front of the Gardena Post Office, there are two marked lanes of westbound traffic on West Redondo Beach Boulevard.  [RT 39:25-40:11] Those lanes are paved in dark asphalt and are divided by a single lane of raised ceramic lane dividers. [Ex. 104-1; RT 39:25-40:11]

26.  Between the strip mall and the entrance to the public parking lot of the Gardena Post Office, there are only two marked lanes of westbound traffic on West Redondo Beach Boulevard.  [RT 40:3-41:5; Declaration of Eric Deyerl ("Deyerl Decl.") ¶¶ 89-94]

27. For the entire path of travel taken by plaintiff's vehicle (approximately 70-80 feet) along West Redondo Beach Boulevard, there are only two marked lanes of westbound traffic. [Deyerl Decl. ¶¶ 76, 93]

28.  No third lane or "merger lane" existed. [Deyerl Decl. ¶¶ 89-94; Ex. 106-2]

29.  There are no marked lane dividers for the purported "merger lane." [RT 92:15-23]

30.  In any event, plaintiff did not use the paved shoulder as a merge lane to enter the two marked lanes; instead, plaintiff used it to pass stopped traffic on the right.

31.  Prior to the collision, Ms. Slaughter was traveling eastbound on West Redondo Beach Boulevard in order to return to the Gardena Post Office after completing her work shift. [RT 452:25-453:2]

32.  Ms. Slaughter turned on her left-turn signal and entered the designated left-turn pocket lane on eastbound West Redondo Beach Boulevard in front of the Gardena Post Office. [Ex. 104-2; RT 34:7-18, 41:25-42:6, 454:8-10, 469:2-9]

33.  Ms. Slaughter came to a complete stop and waited for an opportunity to make a left turn. [RT 454:6-10] She yielded to oncoming westbound traffic in the two marked lanes. [RT 460:1-16, 454:1-7] Her left-turn signal remained on after she entered the left-turn pocket lane. [RT 470:2-7]

34.  After about five minutes, during which Ms. Slaughter's vehicle was waiting in the left-turn pocket lane, the vehicles in the two marked lanes of westbound West Redondo Beach Boulevard stopped because of a red light at Nuano Drive. [RT 454:11-17, 469:20-470:1] The vehicles yielded, providing a gap for Ms. Slaughter to make her left turn into the employees' driveway. [RT 470:13-15]

35.  When making a left turn, Ms. Slaughter would check oncoming

traffic to make sure it was safe to do so. [RT 457:22-458:4]

36. Before the incident, Ms. Slaughter had seen vehicles driving along the paved shoulder plaintiff was using at the time of the collision. [RT 456:11-25, 457:22-458:4]

37. Prior to making her left turn into the employee's parking lot, Ms. Slaughter looked for oncoming traffic, including any potential vehicles driving along the paved shoulder between the curb and the two marked lanes of traffic. [RT 457:16-459:12]

38. During her turn, Ms. Slaughter continued to look to her right at the yielding traffic. [RT 470:16-21]

39. Due to her high-seated position on the right side of the postal truck, Ms. Slaughter had an unobstructed view of the paved shoulder as she turned left. [RT 470:22-471:14, 764:10-765:21, 769:13-770:12]

40. Ms. Slaughter did not see plaintiff's vehicle or any other vehicle traveling in the paved shoulder before the collision. [RT 471:15-20]

41. During her left turn, Ms. Slaughter was traveling between five to ten miles per hour. [RT 460:9-10] She slowed to approximately five miles per hour while entering the employee's driveway. [RT 34:7-18, 459:13-460:8]

42. As Ms. Slaughter was completing her left turn, plaintiff passed the yielding two lanes of traffic on the right.

43. Plaintiff's vehicle struck the right side of the postal truck behind the door, in front of the rear wheel well, close to the rear tire. [RT 34:7-35:14, 43:12-25, 471:22-472:10, 473:9-11]

44. Plaintiff reported to his psychotherapist that his vehicle

collided with the postal truck near its back wheel. [RT 920:5-13]

45.   The front wheels of the postal truck had already entered the ramp of the employees' driveway when plaintiff's car collided with it. [RT 471:21-25, 473:12-14, 480:7-14, 587:22-25; Ex. 104-3]

46.   The postal truck's rear wheels were in the paved shoulder, outside the two marked lanes of traffic, when the collision occurred. [RT 587:22-25]

47.   At the time of the collision, plaintiff's vehicle was in the paved shoulder – the lighter-colored concrete gutter area close to the north curb, outside of and to the right of the two marked lanes of traffic, which were paved in darker asphalt. [RT 473:4-11, 480:1-6; Ex. 104-3]

48.   Ms. Slaughter heard a single impact or thud. [RT 472:23-24] The impact was not sufficiently forceful to cause either the postal truck or the empty mail trays within the postal truck to move. [RT 472:11-22].

49.   Plaintiff traveled at speeds of up to 25 miles per hour while driving on the paved shoulder. [RT 552:1-9, 654:3-15, 654:12-15]

50.   Immediately before the collision, plaintiff saw a large truck to his left in lane two. [RT 653:14-24]

51.   Plaintiff understood that there were only two lanes of westbound travel on West Redondo Beach Boulevard after Normandie Avenue. [RT 159:1-16, 160:6-8]

52.   Plaintiff did not look for traffic coming from the left-turn pocket lane on eastbound West Redondo Beach Boulevard in front of the Gardena Post Office. [Pl. Depo. 171:2-10]

53.   The stopped traffic in the two westbound lanes should have

alerted plaintiff to check for cross traffic but he neglected to do so. [Deyerl Decl. ¶ 86]

54.  Plaintiff had traveled 70-80 feet in the paved shoulder before colliding with Ms. Slaughter's Postal truck.  [RT 95:12-17]

55.  Plaintiff was wearing a post-surgery "clamshell" brace on his wrist at the time of the collision.  [RT 474:19-22, 589:7-23; Pl. Depo. 182:21-23] The brace restricted his movement to the extent that he "couldn't wiggle" his thumb and his "whole wrist was immobilized." [Pl. Depo. 133:21-134:20]

56.  Dr. Ronald Goldstein, the orthopedic hand surgeon who had performed a wrist surgery on plaintiff a few months before the collision, told plaintiff not to drive while wearing the brace.  [RT 173:12-21]

57.  Prior to the collision, plaintiff was taking prescription medications including Norco, Wellbutrin, Trazadone, and Ativan, among others.  [Ex. 120-5, 120-6; RT 549:19-24, 550:10-18, 550:24-511:12, 167:25-168:20]

58.  After surgery, Dr. Goldstein prescribed Norco, an opioid, to relieve plaintiff's wrist pain.  [RT 167:1-168:20]

59.  Dr. Goldstein instructs all his patients that they should not drive while under the influence of narcotics.  [RT 171:15-20]

60.  Norco is a prescription drug that is accompanied by manufacturer's warnings against operating heavy machinery, including motor vehicles, while taking the drug. [RT 816:10-25]

61.  Plaintiff admitted to his primary care physician that he had been taking five pills of Norco a day for his chronic pain just prior to the collision.  [RT 554:4-17]

62. According to plaintiff's physician, five pills of Norco a day is a "high dosage."  [RT 558:6-11]

63. Plaintiff had taken Norco on the day of the collision.  [RT 589:24-590:11]

64. Plaintiff could have avoided the collision if he had checked for cross-traffic and refrained from passing the two lanes of stopped traffic on the right.  [Deyerl Decl. ¶¶ 83-88]

65. Ms. Slaughter is credible. Plaintiff is not credible. In general, plaintiff is an "unreliable historian."

## Conclusions of Law

1. The Federal Tort Claims Act ("FTCA") allows recovery for negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); see Dalehite v. United States, 346 U.S. 15 (1953).

2. California law governs this action. Molzof v. United States, 502 U.S. 301, 305 (1992); 28 U.S.C. §§ 1346(b), 2674.

3. To prove a negligence claim under California law, a plaintiff must show: "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach [w]as the *proximate or legal cause* of the resulting injury." Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996)(quoting Evan F. v. Hughson United Methodist Church, 8 Cal. Ap. 4th 828, 834 (1992)); Peter W. v. San Francisco Unified School District, 60 Cal.App.3d 814, 820 (1976) ("According to the familiar California formula, the allegations requisite to a cause

9

of action for negligence are (1) facts showing a duty of care in the defendant, (2) negligence constituting a breach of the duty, and (3) injury to the plaintiff as a proximate result"); see Judicial Council of California, Civil Jury Instructions (2016) ("CACI") 400.

4.    "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person." Cal. Civ. C. § 1714; see CACI 401.

5.    "A driver must exercise the degree of care and caution that an ordinarily careful and prudent person, acting in same or similar circumstances, would exercise." Sedie v. United States, 2010 WL 1644252, at *11 (N.D. Cal. Apr. 21, 2010)(citing Sills v. Forbes, 33 Cal.App.2d 219, 227 (1939)). "[A driver is] under a duty, both by statute and common law, to operate his vehicle without negligence so as to abstain from injuring any other person or his property." Bewley v. Riggs, 262 Cal.App.2d 188, 194 (1968); see CACI 700.

6.    Section 21801(a) of the California Vehicle Code explains a driver's duty in executing a left-hand turn:

> The driver of a vehicle intending to turn to the left or to complete a U-turn upon a highway, or to turn left into public or private property, or an alley, shall yield the right-of-way to all vehicles approaching from the opposite direction which are close enough to constitute a hazard at any time during the turning movement, and shall continue to yield the right-of-way to the approaching vehicles until the left turn or U-turn can be made with reasonable safety.

See CACI 705.

7.   Section 21801 (b) requires oncoming drivers to yield when a left-turning driver in front of them has properly executed a left-hand turn:

> A driver having yielded as prescribed in subdivision (a), and having given a signal when and as required by this code, may turn left or complete a U-turn, and the drivers of vehicles approaching the intersection or the entrance to the property or alley from the opposite direction shall yield the right-of-way to the turning vehicle.

See Ball v. United States, 191 F. Supp. 467, 468 (N.D. Cal. 1961) ("[T]he driver turning left, having so yielded, may then make his turn and all other vehicles approaching from the opposite direction shall yield the right of way to him. Clearly, the driver turning left need not yield the right of way to all through motorists; under certain conditions they must yield to him.").

8.   Plaintiff relies on subsection (a) of the California Vehicle Code § 21801, which is fair, because subsection (a) is applicable. But plaintiff ignores subsection (b).  Subsection (b) indicates that once a turning driver has complied with subsection (a), as Ms. Slaughter did, then plaintiff was obliged to yield.  By failing to do so, plaintiff violated § 21801(b).

9.   That Ms. Slaughter checked the paved shoulder for vehicles – but did not see plaintiff's vehicle – is evidence of caution, not carelessness. The most likely explanation as to why Ms. Slaughter did not see plaintiff's vehicle was that it was still in the strip mall driveway or otherwise far from her planned path of travel until she had completed her turn and slowed to begin to enter the driveway of

the employee parking lot.

10.   A driver is not required to anticipate danger which occurs as a result of another driver violating the law: "every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person." Dickinson v. Pac. Greyhound Lines, 131 P.2d 401, 402 (Cal. App. 1942); see also Leblanc v. Cloverdale, 3 P.2d 312, 313 (1931)(a driver has the right to assume that the driver of the other car will obey the law, slow down, and yield the right of way).

11.   That others sometimes drive on the paved shoulder where plaintiff chose to pass the stopped traffic on the right neither justifies nor excuses plaintiff's behavior.  People often exceed the speed limit, run red lights, drive under the influence of alcohol, etc., but that does not justify others in doing so.   Nor does it require law abiding drivers to anticipate that other drivers will drive in an unsafe, unlawful, or reckless manner.  See CACI 411.

12.   A left-turning driver is not liable "[i]f another driver, by reason of his violation of a statutory provision, or by reason of other negligent conduct, collides with him." Washam v. Peerless Automatic Staple Mach. Co., 45 Cal. App. 2d 174, 178 (1941).

13.   Ms. Slaughter was not negligent and did not breach the duty of care in executing her left-hand turn.

14.   By contrast, plaintiff was negligent and breached the duty of care in several respects.

15.   First, plaintiff breached the duty of care when he failed to

yield the right of way.

16.   "Where a car has actually entered an intersection [or the entrance to the property] before the other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision.  He has a right to assume that the driver of the other car will obey the law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision." Leblanc, 3 P.2d at 13.

17.   Ms. Slaughter was in the intersection and in the process of completing her left turn, before plaintiff's vehicle approached. Two lanes of vehicles had yielded to her, but plaintiff's vehicle inexplicably did not.

18.   Second, plaintiff breached the duty of care when he failed to keep a lookout for cross-traffic.

19.   "All drivers of vehicles on a public highway are required by law to keep a vigilant lookout ahead so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. Failure to keep such lookout, or failure to see that which may be readily seen, if the driver is looking would constitute negligence as a matter of law." Huetter v. Andrews, 91 Cal. App. 2d 142, 146 (1949); see CACI 700.

20.   The California Driver's Handbook advises against what plaintiff did in this case: "Before you pass, look ahead for road conditions and traffic that may cause other vehicles to move into your lane." [Ex. 109-45]

21.   Plaintiff breached the duty of care when, in heavy traffic,

including a large truck partly blocking his view to his left, he failed to keep a proper look out, and failed to put himself in a position to determine if an oncoming vehicle turning left had the right of way.

22.   Third, plaintiff breached the duty of care by passing slower-moving traffic "upon the right" when the road conditions made it unsafe to do so.

23.   "The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting that movement in safety. In no event shall that movement be made by driving off the paved or main-traveled portion of the roadway." Cal. Veh. C. § 21755.

24.   Passing on the right is prohibited regardless of whether the passing vehicle began the maneuver from a marked lane or from the shoulder. Opinion No. 59-230, 35 Ops. Cal. Atty. Gen. 39, 41, 1960 Cal. AG Lexis 14 (February 8, 1960)("[T]his section prohibits the passing of a vehicle on the right by traveling on the shoulder or off the main-traveled portion of the roadway, regardless of whether the passing vehicle left the main-traveled portion of the roadway to reach the shoulder in passing, or was already present there.")(interpreting Cal. Veh. C. § 21755).

25.   When a driver passes traffic and thereafter strikes a vehicle making a legal left-hand turn in front of him, he is negligent per se and liable for all injuries sustained by the driver and passengers in the vehicle making the left-turn. See Hickson v. Beitel, 103 Cal. App. 2d 391, 392, (1951) (holding that where a driver passed a stopped car on the right, and a collision immediately ensued with a driver making a left-hand turn, the violation against passing traffic

upon the right was negligence per se); People v. Wattier, 51 Cal.App.4th 948, 951 (1996) (finding a criminal violation where a driver followed a car into the right lane and then proceeded further onto the right shoulder, accelerated, and tried to pass the front vehicle on the right).

26.  The California Driver's Handbook advises: "Passing other vehicles at crossroads, railroad crossings, and shopping center entrances is dangerous." [Ex. 109-45]

27.  Fourth, plaintiff breached the duty of care when he drove in the paved shoulder or concrete gutter alongside West Redondo Beach Boulevard, outside the marked lanes of traffic.

28.  The Vehicle Code expressly prohibits plaintiff's chosen path of travel: "In no event shall that movement [passing traffic upon the right] be made by driving off the paved or main-traveled portion of the roadway." Cal. Veh. C. § 21755.

29.  The California Driver's Handbook advises: "Never drive off the paved or main-traveled portion of the road or on the shoulder to pass." [Ex. 109-45]

30.  At the time of the collision, plaintiff was traveling in the paved shoulder, which was not within the main-traveled portion of the roadway.

31.  Fifth, plaintiff breached the duty of care by wearing a clamshell brace while driving and by driving while under the influence of prescription medication.

32.  A person must exercise reasonable care in driving a vehicle, and must "control the speed and movement of their vehicles."  CACI 700.

33.   Sections 21352 and 21353 of the California Vehicle Code prohibit driving under the influence of drugs, whether or not prescribed.  A driver is "under the influence" when she has consumed drugs that impair her ability to drive in a reasonably careful manner. CACI 709.

34.   Sixth, plaintiff breached the duty of care by driving too fast.

35.   The California "basic speed law," prohibits driving at a rate of speed that is unsafe under the circumstances.  Cal. Veh. C. § 22350; see CACI 706; see also Hardin v. San Jose City Lines, Inc., 41 Cal.2d 432, 438 (1953)("a violation of the statute is negligence").

36.   Plaintiff violated the "basic speed law" by driving 20-25 miles per hour in the paved shoulder.  The court believes plaintiff's relatively contemporaneous accounts of his speed of travel, rather than the lower estimates he provided at trial.

37.   Due to his use of prescribed medication and the restrictive brace on his wrist, plaintiff should have been driving even more slowly and cautiously than an unimpaired driver.  See CACI 403.

38.   Plaintiff's breaches of his duty to operate his vehicle with due care were the cause of the collision and his injuries, not anything that Ms. Slaughter did or failed to do.

39.   There is no need to address the issue of comparative fault because Ms. Slaughter was not negligent and nothing that she did or failed to do was a substantial factor in causing the collision or any injuries resulting therefrom.

## Conclusion

Based on the foregoing findings of fact and conclusions of law, the court concludes that plaintiff was negligent, Ms. Slaughter was not negligent, plaintiff's negligence was the sole cause of the collision, and plaintiff is entirely responsible for any injuries and other losses resulting from the collision.  Therefore, defendant is entitled to judgment on the merits.

**IT IS SO ORDERED.**

Dated: March 8, 2017



Andrew J. Wistrich
United States Magistrate Judge